FILED
99 MAR 22 PM 3: 38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARK C. BENTLEY, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. CV 98-BU-0984-S |
| MOORE-HANDLEY, INC., | ) |
| Defendant. | ) |

ENTERED
MAR 2 2 1999

## Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant, Moore-Handley, Inc. ("Moore-Handley"), on February 10, 1999. In its motion, the defendant contends that the plaintiff, Mark C. Bentley ("Bentley") cannot present a genuine issue of triable fact supporting his claim that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* The plaintiff, of course, disputes this.

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of

14

the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; it must illuminate, either through evidence on file or, where no such evidence can be presented, through affirmatively pointing out, the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *Cf. Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried.

The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts

The plaintiff in the instant case has some history with Moore-Handley. He was originally hired by the company in 1975 and worked for it until 1979, when he left to start his own business. In 1992, he came back to work of Moore-Handley, but was laid off in 1994. He was rehired in 1995 and worked for the company for two years, until he fell victim to downsizing on April 28, 1997. At the time of this second layoff, which the plaintiff challenges as precipitated by his age, the plaintiff was fifty-three.

During his third span of employment with Moore-Handley, a company engaged in the sale of miscellaneous durable goods to independent hardware stores, the plaintiff occupied three successive positions. The plaintiff was initially rehired as a retail programs manager, a position existing in the business's management department. Soon, he filled the position of director of merchandising, in the merchandising department. The plaintiff was later placed into the newly-created position of director of market planning and development, a position which did not exist in any department. It was from this job that the plaintiff was eventually downsized.[1]

The director of market planning and development was directly answerable to the vice president of sales and marketing. The plaintiff's position was described as essentially that of a market researcher and project coordinator. Among his specific duties were the determination of the pricing of goods, the pursuance of "special projects," the refinement of a sales force training program, the development of store display techniques and the preparation of board meetings.

---

[1] The hiring and the promotions were made by the then-president of Moore-Handley, Emery White. The decision to terminate the plaintiff's employment came from a newly-hired president, Mike Gaines ("Gaines").

When Gaines was made president of Moore-Handley in 1997, the company's business was flagging. The sales of independent hardware stores was on the decrease, due to the advent of large chain warehouses that would sell the same goods at prices undercutting the independent competition. The last year in which the company had turned a profit was 1995; from then until 1997, the company lost approximately one million dollars per year.

Gaines was hired with the purpose of turning the company's lagging fortunes around and making the business profitable. To accomplish this task, Gaines determined that a reduction in the workforce would be needed. In management, this would result in cutting seven or eight employees loose. "In order to make his decision on which employees to terminate, Mr. Gaines took a look at the entire organization. Mr. Gaines sat down with each of the department heads and asked what every person did, what their responsibilities were, and basically went through and understood what everybody did." Plaintiff's brief in opposition to the motion for summary judgment at 5 (footnotes omitted). Gaines received no negative comments from the vice president of sales and marketing concerning the plaintiff's performance. Indeed, Gaines apparently considered the plaintiff to be adept at handling merchandising, advertising and marketing tasks.

Nonetheless, after considering all of the tasks performed by the plaintiff, Gaines determined that those tasks either could or were being performed by someone else — such as the pricing task — or could be eliminated — such as board meeting preparations. As such, Gaines eliminated the plaintiff's position and terminated the plaintiff. Twenty-three days after his termination, Moore-Handley created the position of merchandiser, which was never offered to the plaintiff.[2] Plaintiff conteds that he was qualified for such new position.

## Contentions & Analysis

In a discrimination suit, a plaintiff can make his case either through giving direct evidence,

---

[2] The plaintiff attempts to cast doubt on Gaines's statements that certain projects could be eliminated by focusing on the elimination of the paint specialist program. That program, under the plaintiff's supervision, was determined to be fruitless and was eliminated. However, states the plaintiff, Gaines testified in his deposition that the company was "refocusing into paint," allegedly indicating that Gaines dissembled when he stated that the paint specialist program was unnecessary. However, as the deposition reveals, Gaines was referring about a contract with Lucite, a company manufacturing paint, which might allow the company to grow its business.

"such as age-biased [or gender-biased] statements made by the decision maker," by use of circumstantial evidence or "by presenting a statistical pattern of discrimination." *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). *See also Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Both parties agree that the plaintiff's case will be made or broken on the issue of whether the plaintiff can set forth a circumstantial evidence case of age discrimination.

The Supreme Court has set up a burden shifting scheme as a means by which a plaintiff can establish a claim of discrimination when the claim rests entirely on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). The plaintiff carries the initial burden of making out a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. "The establishment of the [*prima facie* case] is significant for two reasons: first, it creates a presumption of unlawful discrimination that the employer must rebut or lose as a matter of law; and, second, it means that the plaintiff has present evidence allowing a reasonable trier of fact to infer unlawful discrimination." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642-43 (11th Cir. 1998).

"Generally, a plaintiff in a job-reduction case can establish a prima facie case by demonstrating (1) that he was in a protected age group and was adversely affected by an employment decision;  (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion;  and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1991). *See Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, (11th Cir. 1998). While the plaintiff can demonstrate the initial two elements of the prima facie case, he cannot demonstrate the final element. The defendant has come forward with substantial evidence that its decision in terminating the plaintiff was based upon purely economic motivations. The company was losing money, the plaintiff's job was redundant and its termination decisions were not limited to individuals over forty. The plaintiff responds with two arguments in support of its position. The first is that, of the eight people terminated, three were over the age of forty. The court can draw no age-based animus from this fact, first, as apparently five employees under the age of forty were also terminated and, second, the plaintiff has not put forward evidence demonstrating that the termination of three employees over forty is statistically significant

in proportion to the remainder of the workforce. *See Maddow v. Proctor & Gamble Co., Inc.*, 107 F.3d 846, 852 (11th Cir.1997).

Second, the plaintiff contends that, as there existed another position that the plaintiff was qualified to fill created twenty-three days after the reduction in force, his not being offered that position demonstrates some animus beyond the mere reduction-in-force for his termination. However, although the plaintiff need not demonstrate that Gaines developed the new position at precisely the time of plaintiff's termination, he does not argue one way or the other whether such position was subsequently filled with a younger employee. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1532-33 (11th Cir. 1996) (stating that summary judgment should be denied where there are available job openings which are taken by younger individuals than plaintiff). The plaintiff, having been presented with evidence by the defendant to demonstrate the absence of evidence from which discriminatory animus could be inferred, was required to positively respond to the evidence. The failure of proof, in light of other evidence presented by the defendant that age based animus was not involved in the decision, prevents the plaintiff from using this as grounds for concluding that a genuine issue of triable fact exists on this element.

While it is an unfortunate fact that qualified employees lose their jobs because of economic necessity, it is a fact. In a perfect world, capable individuals would not find their employment terminated for such reasons and it is, in some sense, unjust that employees that work well are paired away when a business finds itself hard-pressed. But such difficulties are not the fault of the business itself, but are the consequence of an economy which waxes and wanes with the tides. Perhaps the plaintiff should draw consolation in the fact that the same economy that caused his dismissal has also created the job which he presently occupies, but even that may be little more than mild seasoning on bitter root.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be GRANTED. This cause will be DISMISSED, with prejudice. Each party to bear own costs.

DONE and ORDERED this 22Nd day of March 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE